*Benton, R. D. Handy, for appellant.*

---

JOSEPH WILSON AND OTHERS *v.* R. G. STONER AND OTHERS.

**Attachment—Grounds for.**

The attachments followed the violation of the many promises upon the part of appellants to the appellees to pay their debts, long before the suits were instituted, and when they must have had the money in their pockets to discharge the greater portion of them. The effort upon the part of Wilson to have suits brought against him, upon paper on which the members of his wife's family were

endorsers and his desire to make a secret sale of his land, although without the desire to prefer a creditor, when connected with the other facts and circumstances proven, establish beyond a doubt a fraudulent intention on the part of appellants in the sale and disposition of their property.

APPEAL FROM BOURBON CIRCUIT COURT.

October, 1872.

OPINION BY JUDGE PRYOR:

Joseph Wilson, one of the appellants in this case, was engaged for many years in the county of Bourbon in buying and selling mules and cattle in the northern and southern markets. His credit in the community where he lived and where the transactions involved in this controversy took place, was unlimited until a few months prior to the institution of these various suits against him. His honesty and integrity, both as a man and trader, seem never to have been questioned until his failure to comply with the contracts he had made with the present appellees and others destroyed the confidence in him, resulting not only in the institution of the suits referred to, but also in obtaining attachments therein which were levied on his property and that of his two sons, who were liable with him, either one or the other, and perhaps both, upon nearly all the notes filed with the consolidated actions. The appellees relied upon many of the grounds enumerated in section 221 for the issual of this renewed attachment, but after a careful examination of the facts presented in the record, we deem it necessary only to allude to the statements contained in the various affidavits "that they had sold and were about to sell their property with the fraudulent intent to cheat, hinder and delay their creditors." It may be as insisted by counsel, that the sixth ground for an attachment in the section of the Code already referred to, can only be adopted in causes where the renewal was the necessary and natural effect of preventing creditors from collecting their debts, and it does seem to us that any other construction would work not only a hardship upon the debtor, but would be greatly prejudicial to the trading and commercial interests of the state. The proof in this cause conduces to show that the appellants, Joseph Wilson and his sons, were continually impressing upon the minds of the cred-

itors of the former, viz., the father, their entire ability to discharge all of their indebtedness and to fulfill all the contracts that the father had made or was about to make with these appellees for their stock. A studied effort was made by Joseph Wilson to induce all those with whom he was about trading, or when the trade had been consummated to believe that he was in a condition not only to meet his liabilities, but to command from the banking institutions in the vicinity of which they levied, all the means necessary to sustain him in his large speculations. These appliances inspired his creditors and neighbors with renewed confidence in him, and his ability to meet his liabilities and comply fully with all his contracts. At the time these creditors were being deluded, Wilson was largely indebted to several of the banks and to individuals greatly in excess of the value of his estate, and was striving, no doubt, to command means by which he could redeem paper upon which he had obtained money with the names of parties upon it who were not only ignorant of their liability upon the paper but failed to recognize their own signature. The facts proven indicate, however, that the names of the parties had long previous been placed upon the bills to enable Wilson to raise money for other purposes than that to which it was applied. If the appellant, instead of betraying the confidence that had so long been imposed in him by the appellees, had disclosed to them his pecuniary condition when he purchased their stock, then they would have no cause to complain, and while this action on his part could only create a suspicion as to his motives, still his failure after he had purchased the stock to pay for them out of the proceeds, as he had promised, or to account for the manner in which he disposed of the money, evidences an intention to place the stock or its proceeds beyond the reach of creditors. While his application of these monies to other debts would not have constituted fraud, still his failure to show that he has thus applied the money, or to account for it in any other way, goes far to establish a fraudulent intention on his part, both in the purchase and sale of the stock. According to his own statement and including the ten thousand dollars that he had sent his son to pay these debts, he still had nine or ten thousand dollars unaccounted for. It is true that the counsel insist that he paid nine thousand dollars of the money to a national bank at Wash-

ington City but of this there is no proof. In this estimate is also included a loss on the cattle of thirteen thousand dollars, when the preponderance of the proof tends to show that his loss did not exceed four thousand dollars, leaving in his hands unaccounted for nearly twenty thousand dollars, and even conceded that thus far he was not guilty of any fraudulent conduct but a mere violation of his promise to pay. After he had sent ten thousand dollars of the cattle money to his son to apply to the payment of these debts, and the truth of which the appellants are disposed to question. The sons, no doubt, with the consent of the father, and, if not, it is immaterial, invested this ten thousand dollars in mules, carried them to a southern market where they were sold by the father, or the son, and still not one dollar paid or the proceeds of the sales accounted for, and the only reason assigned for not paying these creditors is that the father had no interest whatever in them. The mules in the possession of Todd Wilson, and numbering near 100 and claimed by him as his own property, are also so sold, and the proof establishes the fact that they were not his but belonged to Mrs. Lewis. These mules, they, the appellants, claimed to own time and again, and witness after witness details conversation with H. F. Wilson in which he claimed to own the lot of mules when in fact they had no interest whatever in them except, perhaps, in the profits to be made upon the purchase. The claim of ownership was doubtless asserted for the purpose of inducing these creditors and those with whom contracts were made, of the ability of these parties to meet all their obligations and to enable Joseph Wilson to obtain credit. The sale and conveyance of the land to Mrs. Wilson and Mrs. Lewis, while the consideration seems to have been paid by them, evidences an intention on the part of the appellants to so dispose of their property as to enable them to pocket the proceeds regardless of the rights of creditors. We are inclined to the opinion that the repeated statements said to have been made by Joseph Wilson, that he had ample means or as much as twenty thousand dollars with which to pay his debts are true, and while the witnesses who testify on this subject are creditors of the appellants, still their testimony is strongly fortified by all the proof in the case, and the entire failure upon his part to show what he has done with the money. The attachments levied upon the property

of the defendants was calculated to create some bitter feeling on the part of Joseph Wilson towards his creditors and, as he insists, destroyed his credit, that being the only capital he had to enable him to pay his debts. While this may be true, these attachments followed the violation of the many promises upon his part to these appellees to pay their debt long before the suits were instituted, and when he must have had the money in his pocket to discharge the greater portion of that indebtedness. The efforts on the part of Wilson to have suits brought against him upon paper on which the members of his wife's family were endorsers, and his desire to make a secret sale of his land, although without the design to prefer a creditor, when connected with the other facts and circumstances proven in this cause, establishes beyond a doubt a fraudulent intention on part of appellants, Joseph Wilson and H. T. Wilson, in the sale and disposition of their property.

At the time these causes were consolidated a consent order was entered by which the parties were to have the same right to give evidence as witnesses in behalf of each other as if the causes had not been consolidated. We, therefore, see no reason why these parties were not competent witnesses for each other, although they afterwards filed joint pleadings.

The facts in the record conduce to show that the appellant, or two of them, at least, Todd and Andrew Wilson, are men of families and housekeepers, but it also appears that their homesteads are upon the lands owned and claimed by their wives; that they are residing upon the lands adjudged to belong to their wives and not subject to the attachment levied upon them. This clearly appears as to Todd Wilson and it is to be inferred that the same state of facts exist as to Andrew Wilson in the absence of any assertion by him of his rights to the exemption, and when his wife owns a part of a tract of land sought to be made liable by these appellees for their debt. Andrew Wilson is not on this note, nor is his estate made liable therfeor. It is only made liable for the debts for the payment of which his property has been attached. The property of Joseph Wilson is first subjected to the payment of the judgment upon which his sons are liable as sureties and then the property of Todd Wilson. Either of the sureties are liable for the whole of this debt and the failure of the court below to apportion these liabilities between them is no cause for reversal as against the appellees.

Wherefore the judgment of the court below for the reasons herein indicated is affirmed. Samuel Owings does not appear as appellant in this record. Judge Peters did not sit in this case.

*Prall, Kinkead, Buckner, for appellants.*

*T. Turner, Hanson, Houston & Mulligan, R. T. Davis, for appellees.*